| | |
|---|---|
| CAROLINA POWER & LIGHT COMPANY )<br>d/b/a PROGRESS ENERGY CAROLINAS, )<br>INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ACE AMERICAN INSURANCE COMPANY, )<br>)<br>Defendant. ) | **COMPLAINT**<br>(Jury Trial Requested) |

Plaintiff Carolina Power & Light Company d/b/a Progress Energy Carolinas, Inc. ("Progress Energy") brings this action against Defendant ACE American Insurance Company ("ACE") seeking (i) a declaration of insurance coverage for defense costs and other sums incurred or to be incurred by Progress Energy in connection with an underlying lawsuit, (ii) an award of damages for ACE's breach of its obligations under the liability insurance policies at issue, (iii) an award of treble and/or punitive damages for ACE's unfair and deceptive trade practices and/or bad faith conduct and (iv) recovery of all other relief to which Progress Energy may be entitled. In support of its Complaint against ACE, Progress Energy shows as follows:

## I. PARTIES

1. Progress Energy is a North Carolina public service corporation with its principal place of business in Raleigh, North Carolina.

2. Upon information and belief, Defendant ACE is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. Upon information and belief, ACE is, and at all times

relevant to this Complaint has been, licensed as an insurance company authorized to do business in the State of North Carolina, and ACE does in fact conduct business in this State.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a controversy between citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. The Court has authority to adjudicate this matter and to declare the respective rights, duties and obligations of the parties pursuant to 28 U.S.C. § 2201.

4. This Court has personal jurisdiction over this action because, upon information and belief, ACE is engaged in substantial activity within the State of North Carolina in that, <u>inter alia</u>, it is a licensed insurance company that issues insurance policies to North Carolina residents. Furthermore, the insurance coverage at issue here was provided by ACE to Progress Energy, a resident of the State of North Carolina.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because, <u>inter alia</u>, ACE is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District, where Progress Energy is headquartered.

## III. FACTS

6. By and through its agent Progress Energy Service Company, LLC, Progress Energy entered into a contract, effective February 1, 2001, with Osmose, Inc. ("Osmose"), pursuant to which Osmose was to perform various services for Progress Energy, including inspection, treatment and reinforcement of utility poles. That contract, designated Contract No. XTB1000014 (the "Osmose Contract"), is attached as Exhibit A and incorporated by reference.

7. In the Osmose Contract, Osmose agreed to purchase, <u>inter alia</u>, commercial general liability insurance, which would be primary coverage in the event of any bodily injury or property damage. Osmose further agreed to add Progress Energy and its officers, employees, agents and shareholders, as well as all of Progress Energy's parent, subsidiary and affiliate companies, as additional insureds. (Ex. A, Section 20.)

8. For the policy period from January 1, 2003 to January 1, 2004, ACE provided Osmose with a General Liability Policy (Policy No. HDO G20587775) with limits of $2,000,000.00 per occurrence (the "ACE Primary Policy"). A copy of the ACE Primary Policy is attached as Exhibit B and incorporated by reference.

9. For the same policy period, ACE provided Osmose with an Excess Liability Policy (Policy No. X00G21740159), which provided another $5,000,000.00 of liability coverage for each occurrence (the "ACE Excess Policy"). The ACE Primary Policy and the ACE Excess Policy will be referred to collectively as the "ACE Policies" for purposes of this Complaint.

10. Progress Energy is an additional insured under the ACE Primary Policy, which includes an "additional insured" endorsement providing that Progress Energy is an insured "with respect to liability arising out of [Osmose's] operations." (Ex. B, Endt. No. 10.)

11. Upon information and belief, Progress Energy is also an additional insured under the ACE Excess Policy.

12. The ACE Primary Policy provides that ACE "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Ex. B, Section I(A)(1)(a).)

13. Upon information and belief, the ACE Excess Policy provides liability coverage in excess of the coverage provided by the ACE Primary Policy.

3

14. On or about March 12, 2004, a lawsuit was filed by the Estate of Allen Lorenzo Toney, by and through Mary M. Washington as the duly appointed personal representative, against Progress Energy. After initial motions practice regarding removal of the case to federal court, the case was re-filed in the Court of Common Pleas in Darlington County, South Carolina on or about September 27, 2005. The re-filed suit (the "Underlying Lawsuit") named Progress Energy and Osmose, among others, as defendants. A copy of the Complaint in the Underlying Lawsuit is attached as Exhibit C and incorporated by reference.

15. The Underlying Lawsuit sought damages relating to the death of Mr. Toney, which occurred on or about May 2, 2003, after he came into contact with a downed power line. The plaintiff asserted causes of action for negligence, wrongful death and strict liability, and the plaintiff sought to recover actual, consequential and punitive damages. In particular, the plaintiff claimed that "the utility pole in question had rotten sections which contributed to the fact that it fell down on the day in question." (Ex. C, ¶ 6.)

16. The utility pole at issue in the Underlying Lawsuit fell during a storm. The pole had been inspected by Osmose on or about January 21, 2003, and Osmose had incorrectly classified the pole as one that was not in need of immediate replacement. Another nearby pole, which was properly identified by Osmose as a "priority pole," was in fact replaced by Progress Energy well in advance of the May 2 storm.

17. Initially, Osmose agreed to indemnify Progress Energy, pursuant to the Osmose Contract, and ACE accepted the request to defend and indemnify Progress Energy, subject to a reservation of rights. Indeed, until in or around April of 2008, the same lawyer defended both Progress Energy and Osmose in the Underlying Lawsuit. However, at or around that time, ACE retained separate defense counsel to represent Osmose.

18. Prior to trial in the Underlying Lawsuit, Progress Energy advised Osmose and ACE of its continued expectation that Progress Energy would be reimbursed for the full amount of its defense costs. Furthermore, Progress Energy advised Osmose and ACE of its view that the Underlying Lawsuit could and should settle for an amount within the limits of the ACE Primary Policy. However, the case was not settled, and ACE did not reimburse Progress Energy for any of the defense costs that it paid.

19. Upon information and belief, the per-occurrence deductible applicable to the ACE Primary Policy was satisfied well in advance of the trial of the Underlying Lawsuit.

20. By letter dated May 7, 2009, a copy of which is attached as Exhibit D and incorporated by reference, ACE took the position that it did not owe defense or indemnity for the independent negligent acts of Progress Energy, and it demanded that Progress Energy separate its "invoices documenting legal fees incurred for the defense of Progress' independent negligence and the defense of Progress for the actions of Osmose." If such separated invoices were provided, ACE stated that it would reimburse only "reasonable and customary legal fees commensurate with the proportionate share of liability of all parties." ACE further insisted that, in the event of any settlement, Progress Energy would have to "contribute to settlement in an amount reflective of their [sic.] independent negligence."

21. Because there was no basis in the ACE Policies for ACE's claim that Progress Energy was not covered for its own negligence or that only a portion of Progress Energy's defense costs would be covered, Progress Energy did not provide invoices separated in the manner demanded by ACE. Instead, Progress Energy consistently maintained that the full amount of its defense costs in excess of the per-occurrence deductible should be covered.

22. During the trial of the Underlying Lawsuit, counsel that ACE retained to represent Osmose repeatedly conferred with plaintiff's counsel during the course of trial, and focused the presentation of evidence and argument on alleged negligence by Progress Energy.

23. By letter dated June 4, 2009, Progress Energy advised ACE that it viewed the conduct by ACE's retained counsel as a repudiation of its obligations to Progress Energy as its additional insured, and an effort to bring about a verdict against Progress Energy that ACE would then rely upon in an attempt to support its claimed coverage defenses. In that letter, a copy of which is attached as Exhibit E and incorporated by reference, Progress Energy demanded that ACE cease and desist the above-referenced trial strategy, fulfill its obligations to Progress Energy, settle the Underlying Lawsuit at the earliest possible time and provide prompt reimbursement of Progress Energy's defense costs.

24. ACE denied the claims asserted in Progress Energy's June 4 letter, claimed in response that it "remain[ed] committed to defending" both Osmose and Progress Energy and stated that it would "continue to defend Progress and Osmose." A copy of ACE's June 5, 2009 response is attached as Exhibit F and incorporated by reference. In fact, ACE was not "defending" Progress Energy, because it continued to refuse to reimburse Progress Energy's defense costs unless and until Progress Energy agreed to provide itemized billings to allow ACE to pay only a portion of Progress Energy's defense costs.

25. The jury in the Underlying Lawsuit returned a verdict on or about June 6, 2009, awarding the plaintiff $9 million in damages against Progress Energy, with $3.5 million in compensatory damages and $5.5 million in punitive damages.

26. As had been predicted by Progress Energy, ACE notified Progress Energy shortly thereafter that ACE denied any indemnity obligation to Progress Energy based on the jury's verdict. A copy of ACE's denial letter is attached as Exhibit G and incorporated by reference.

27. As a justification for its denial of coverage, ACE claimed that the ACE Primary Policy does not cover punitive damages. ACE further claimed that Progress Energy was not an additional insured because its liability could not arise out of Osmose's operations, due to the fact that the jury had not found Osmose to be negligent. In addition to denying any indemnity obligation, ACE reiterated its refusal to reimburse Progress Energy for the full amount of its defense costs, instead demanding that Progress Energy provide ACE with "segregated billings" so that ACE could pay only those amounts that it deemed to be within the scope of coverage.

28. Neither of the justifications proffered by ACE for its denial of coverage is supported by the policy language or applicable law.

### IV. CAUSES OF ACTION

#### Count One – Declaratory Judgment

29. The allegations contained in the prior paragraphs are re-alleged and incorporated by reference as if set forth verbatim herein.

30. Progress Energy is a party interested under the ACE Policies whose rights are affected by the ACE Policies, and this declaratory judgment action is filed to establish the parties' rights, status, duties and legal relations under the ACE Policies in light of ACE's refusal to reimburse Progress Energy for its defense costs or to indemnify Progress Energy in connection with the Underlying Lawsuit.

31. There exists a real and justiciable controversy between Progress Energy and ACE regarding their opposing contentions as to ACE's obligations under the ACE Policies, and

Progress Energy is entitled to a declaratory judgment that settles this issue and affords Progress Energy relief from the present uncertainty and insecurity as to the rights, status and legal relations between the parties.

32. Progress Energy seeks a construction of the ACE Policies regarding coverage for defense costs and other sums incurred or to be incurred in connection with the Underlying Lawsuit. Specifically, Progress Energy seeks a judicial declaration providing: (i) that ACE has a duty to reimburse Progress Energy for the full amount of its defense costs incurred in connection with the Underlying Lawsuit, and (ii) that ACE has a duty to indemnify Progress Energy, to the extent of the monetary limits of ACE's coverage under the ACE Policies, against additional sums incurred or to be incurred by Progress Energy to resolve the Underlying Lawsuit.

## Count Two – Breach of Contract

33. The allegations contained in the prior paragraphs are re-alleged and incorporated by reference as if set forth verbatim herein.

34. Progress Energy is an additional insured under the ACE Primary Policy.

35. Upon information and belief, Progress Energy is an additional insured under the ACE Excess Policy.

36. Progress Energy has complied with all of its duties and obligations under the ACE Policies and has satisfied all conditions precedent to coverage under the ACE Policies for losses incurred by Progress Energy in connection with the Underlying Lawsuit.

37. ACE has breached its contractual obligations by, <u>inter alia</u>, refusing to reimburse Progress Energy for the full amount of its defense costs and refusing to indemnify Progress Energy in connection with the Underlying Lawsuit.

38. As a direct and proximate result of ACE's breaches, Progress Energy has suffered and continues to suffer actual, consequential and incidental damages in an amount to be proved at trial, but in any event greater than $75,000.00.

### Count Three – Breach of Implied Duty of Good Faith and Fair Dealing

39. The allegations contained in the prior paragraphs are re-alleged and incorporated by reference as if set forth verbatim herein.

40. Pursuant to the implied covenant of good faith and fair dealing imposed on all parties to contracts under North Carolina law, ACE has a duty to exercise good faith toward Progress Energy and to deal fairly with it.

41. ACE has breached its duty of good faith and fair dealing to Progress Energy as set forth herein.

42. As a direct and proximate result of ACE's breaches, Progress Energy has suffered and continues to suffer actual, consequential and incidental damages in an amount to be proved at trial, but in any event greater than $75,000.00.

### Count Four – Unfair and Deceptive Trade Practices

43. The allegations contained in the prior paragraphs are re-alleged and incorporated by reference as if set forth verbatim herein.

44. ACE's actions as alleged above and as may be proved at trial were in and affecting commerce.

45. The acts of ACE as set forth above and as may be proved at trial violate Chapter 58 and Chapter 75 of the General Statutes of North Carolina, as they constitute unfair claims settlement practices and/or unfair and deceptive trade practices.

46. As a direct and proximate result of these unfair, deceptive and unlawful acts by ACE, Progress Energy has suffered and continues to suffer actual, consequential and incidental damages in an amount to be proved at trial, but in any event greater than $75,000.00.

47. Pursuant to N.C. Gen. Stat. § 75-1.1, et seq., Progress Energy is also entitled to recover from ACE the costs and attorneys' fees that it incurs in this action, as well as treble damages.

### Count Five – Common Law Bad Faith

48. The allegations contained in the prior paragraphs are re-alleged and incorporated by reference as if set forth verbatim herein.

49. Upon information and belief, ACE's unfounded refusal and failure to reimburse Progress Energy's defense costs and to indemnify Progress Energy constitutes a bad faith refusal to pay a valid claim.

50. Upon information and belief, ACE's bad faith refusal to pay this valid claim, as well as the other conduct alleged above and as may be proved at trial, was willful, wanton and in conscious disregard of its duties to Progress Energy, and thus constitutes aggravating and outrageous conduct.

51. As a direct and proximate result of ACE's bad faith conduct, Progress Energy has suffered and continues to suffer actual, consequential and incidental damages in an amount to be proved at trial, but in any event greater than $75,000.00.

52. Because, upon information and belief, the above-described conduct by ACE constitutes fraud, malice and/or willful and wanton conduct, an award of punitive damages is also justified under applicable law.

## V. DEMAND FOR JURY TRIAL

Progress Energy hereby demands a trial by jury as to all issues so triable.

## VI. RELIEF REQUESTED

For the reasons set forth above, Progress Energy respectfully asks this Court to grant Progress Energy the following relief:

1. A judicial declaration providing: (i) that ACE has a duty to reimburse Progress Energy for the full amount of its defense costs incurred in connection with the Underlying Lawsuit, and (ii) that ACE has a duty to indemnify Progress Energy, to the extent of the monetary limits of ACE's coverage under the ACE Policies, against additional sums incurred or to be incurred by Progress Energy to resolve the Underlying Lawsuit;

2. An award of compensatory damages from ACE in an amount to be proved at trial, but in any event in excess of $75,000.00;

3. An award of treble and/or punitive damages from ACE in the maximum amount allowed by law;

4. Recovery from ACE of all costs of suit incurred herein, including reasonable attorneys' fees and related expenses, in the maximum amount allowed by law;

5. Pre- and post-judgment interest on all compensatory damages awarded, as allowed by law; and

6. Such other relief to which Progress Energy may be entitled.

Dated this 15th day of July, 2009.

Respectfully submitted,

**SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.**

/s/ K. Alan Parry
K. Alan Parry
  N.C. State Bar No. 31343
  aparry@smithlaw.com
Caroline N. Belk
  N.C. State Bar No. 32574
  cbelk@smithlaw.com
Kelli A. Ovies
  N.C. State Bar No. 35485
  kovies@smithlaw.com
2500 Wachovia Capitol Center
P.O. Box 2611
Raleigh, NC 27602-2611
919.821.1220
919.821.6800 (fax)

**ATTORNEYS FOR PLAINTIFF CAROLINA POWER & LIGHT COMPANY d/b/a PROGRESS ENERGY CAROLINAS, INC.**